**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHARLES JUDD,

                              Plaintiff,

      - v -                              Civ. No. 9:12-CV-00058
                                                   (NAM/RFT)

GUYNUP, *Sgt., Clinton Correctional Facility*;
CAPT. PAUL WOODRUFF, *Hearing Officer,*

                              Defendants.

**APPEARANCES:**                              **OF COUNSEL:**

**CHARLES JUDD**
10-A-388
Plaintiff, *Pro Se*
Elmira Correctional Facility
P. O. Box 500
Elmira, NY 14902

**HON. ERIC T. SCHNEIDERMAN**           **ADRIENNE J. KERWIN, ESQ.**
Attorney General of the State of New York     Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

### REPORT-RECOMMENDATION and ORDER

     Charles Judd, a New York State prison inmate proceeding *pro se* and *in forma pauperis*, commenced this civil rights action, pursuant to 42 U.S.C. § 1983, alleging that Defendants violated his procedural due process rights under the Fourteenth Amendment. *See* Dkt. No. 14, Am. Compl.[1] Defendants now move for dismissal of the Amended Complaint pursuant to Federal Rule of Civil

---

[1] Plaintiff filed an Amended Complaint as of right pursuant to Federal Rule of Civil Procedure 15(a)(1)(A).

Procedure 12(b)(6). Dkt. No. 19. Plaintiff opposes the Motion. Dkt. No. 21. For the reasons that follow, it is recommended that Defendants' Motion be **GRANTED** and the entire Complaint be **DISMISSED**. However, in light of Plaintiff's *pro se* status, it is further recommended that Plaintiff be afforded an opportunity to amend his pleading.

## I. BACKGROUND

What follows is a summary of the facts alleged in the Plaintiff's pleadings and Response[2] to Defendants' Motion, which must be accepted as true for the purposes of addressing Defendants' Motion to Dismiss. *See infra* Part II.A.

On August 19, 2011, there was an "uprising" in or near the North Yard of the Clinton Correctional Facility. Am. Compl. at ¶ 5. At the time of the uprising there were as many as 259 inmates in the vicinity of the North Yard at Clinton. *Id*. Plaintiff, denies participation in the uprising. *See generally* Am. Compl. Defendant Gunyup, an area supervisor, was in the North Yard at the time of the uprising, and directed another officer to lock the Plaintiff up. *Id*. at ¶ 10; Pl.'s Opp'n at p. 1.

Thereafter, Plaintiff was "charged in a single misbehavior report for violating a host of prison rules arising from a[n] uprising at [Clinton]." Pl.'s Affirm. at ¶ 4. The report did "not indicate the words or actions [Plaintiff] employed in the alleged incident[.]" Am. Compl. at ¶ 5. On August 26, 2011, a superintendent's hearing was held and presided over by Defendant Woodruff. *Id*. at ¶ 1.

The evidence presented at the hearing included the testimony of Plaintiff, the testimony of Defendant Guynup, and video of the uprising. *Id*. at ¶¶ 3 & 11. Throughout the duration of the

---

[2] For the purposes of evaluating a motion to dismiss brought against a *pro se* plaintiff, the Second Circuit has deemed facts found in a plaintiff's response to a defendant's motion to dismiss to be part of the plaintiff's complaint – even though they were not contained within the original complaint. *See Drake v. Delta Air Lines, Inc.,* 147 F.3d 169, 170 (2d Cir. 1998) (*per curiam*).

hearing, Plaintiff averred that he was not in the area where the alleged incident took place nor involved in any way in the uprising. *Id*. at ¶¶ 1, 4, & 9. Defendant Guynup testified that "no Staff member observed plaintiff engag[ing] and/or participat[ing] in the alleged uprising." *Id.* at ¶ 11. Furthermore, "at no relevant time[]" did the videotapes reviewed by Defendant Woodruff "clearly . . . identify [] the Plaintiff." *Id.* at ¶ 4. Nevertheless, Defendant Woodruff found Plaintiff guilty and sentenced him to 545 days of confinement in SHU, with a concomitant "loss of all privileges commissary, phone, packages; and loss of good time credit." *Id.* at ¶ 1; Pl.'s Affirm. at ¶ 7. Plaintiff appealed Defendant Woodruff's determination. *Id.*

On October 26, 2011, Defendant Woodruff's decision was reversed and a new hearing was ordered. Amend. Compl., Attach. Supt. Hr'g Review. Thereafter a rehearing was conducted by J. Earl on November 9, 2011, and all charges were "dismissed because there was no 'Substantial Evidence' in the record to find the Plaintiff guilty as charged." Pl.'s Affirm. at ¶ 7.

During his confinement in SHU, Plaintiff's blood pressure increased, requiring him to take medication, and he suffered from depression. Pl.'s Opp'n at p. 1.

## II. DISCUSSION

### A. Standard of Review

On a motion to dismiss, the allegations of the complaint must be accepted as true. *See Cruz v. Beto*, 405 U.S. 319, 322 (1972). The trial court's function "is merely to assess the legal feasability of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980). "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974) (*overruled on other grounds by Davis v. Scherer*, 468

U.S. 183 (1984)).

"Generally, in determining a 12(b)(6) motion, the court may only consider those matters alleged in the complaint, documents attached to the complaint, and matters to which the court may take judicial notice." *Spence v. Senkowski*, 1997 WL 394667, at *2 (N.D.N.Y. July 3, 1997) (citing *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991)). Moreover, "even if not attached or incorporated by reference, a document 'upon which [the complaint] *solely* relies and which is *integral to the complaint*' may be considered by the court in ruling on such a motion." *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (emphasis in original) (quoting *Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 47 (2d Cir. 1991)).

The court is bound to give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *See Retail Clerks Intern. Ass'n, Local 1625, AFL-CIO v. Schermerhorn*, 373 U.S. 746, 754 n. 6 (1963); *see also Arar v. Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008). Nevertheless, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).

A motion to dismiss pursuant to Rule 12(b)(6) may not be granted so long as the plaintiff's complaint includes "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. at 697 (citing *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. This plausibility standard "is not akin to a 'probability requirement,' but it asks

for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In this respect, to survive dismissal, a plaintiff "must provide the grounds upon which his claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (quoting *Bell Atl. Corp. v. Twombly*, 440 U.S. at 555). Thus, in spite of the deference the court is bound to give to the plaintiff's allegations, it is not proper for the court to assume that "the [plaintiff] can prove facts [which he or she] has not alleged, or that the defendants have violated the . . . laws in ways that have not been alleged." *Assoc. Gen. Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983). The process of determining whether a plaintiff has "nudged [his] claims . . . across the line from conceivable to plausible," entails a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. at 679-80.

With this standard in tow, we consider the plausibility of Plaintiff's Amended Complaint.

### B. Eleventh Amendment

The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity

provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540.

In the instant case, Plaintiff seeks only monetary damages. Therefore, Plaintiff's claims against all Defendants in their official capacities should be **DISMISSED**.

### C. Due Process

The Due Process Clause of the Fourteenth Amendment protects against restraints or conditions of confinement that "exceed[] the sentence in . . . an unexpected manner[.]" *Sandin v.*

*Conner*, 515 U.S. 472, 484 (1995). To state a due process claim under § 1983, an inmate must first establish that he enjoys a protected liberty interest. *Arce v. Walker*, 139 F.3d 329, 333 (2d Cir. 1998) (citing *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989)). Inmates' liberty interests are derived from two sources: (1) the Due Process Clause of the Fourteenth Amendment; and (2) state statute or regulations. *Id*. With regard to liberty interests arising directly under the Due Process Clause, the Supreme Court has "narrowly circumscribed its scope to protect no more than the 'most basic liberty interests in prisoners[,]'" *Arce v. Walker*, 139 F.3d at 333 (quoting *Hewitt v. Helms*, 459 U.S. 460, 467 (1983)), and limited to freedom from restraint that "exceed[] the sentence in . . . an unexpected manner[,]" *Sandin v. Conner*, 515 U.S. 472, 478 (1995).

Turning to liberty interests created by the state, the Supreme Court states that such liberty interests shall be limited solely to those deprivations which subject a prisoner to "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Connor*, 515 U.S. at 484; *see also Giano v. Selsky*, 238 F.3d 223, 225 (2d Cir. 2001) (citing *Sandin*); *Welch v. Bartlett*, 196 F.3d 389, 392 (2d Cir. 1999).

Factors relevant to an analysis of what constitutes an atypical and significant hardship include "(1) the effect of the confinement on the length of prison incarceration, (2) the extent to which the conditions of segregation differ from other routine prison conditions, and (3) the duration of the disciplinary segregation compared to discretionary confinement." *Spaight v. Cinchon*, 1998 WL 167297, at *5 (N.D.N.Y. Apr. 3, 1998) (citing *Wright v. Coughlin*, 132 F.3d 133, 136 (2d Cir. 1998)); *see also Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (stating that in assessing what constitutes an atypical and significant hardship, "[b]oth the conditions [of confinement] and their duration must be considered, since especially harsh conditions endured for a brief interval and

somewhat harsh conditions endured for a prolonged interval might both be atypical" (citation omitted)). Though the length of the confinement is one guiding factor in a *Sandin* analysis, the Second Circuit has cautioned that "there is no bright-line rule regarding the length or type of sanction" that meets the *Sandin* standard. *Jenkins v. Haubert*, 179 F.3d 19, 28 (2d Cir. 1999) (citations omitted). Nevertheless, the Court of Appeals has stated that "[w]here the plaintiff was confined for an intermediate duration – between 101 and 305 days – development of a detailed record' of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer v. Richards*, 364 F.3d at 64-65 (quoting *Colon v. Howard*, 215 F.3d 227, 232 (2d Cir. 2000)); *see also Hanrahan v. Doling*, 331 F.3d 93, 97-98 (2d Cir. 2003) ("[W]here the actual period of disciplinary confinement is insignificant or the restrictions imposed relatively minor, such confinement may not implicate a constitutionally protected liberty interest."); *Sims v. Artuz*, 230 F.3d 14, 23 (2d Cir. 2000) (noting that segregative sentences of 125-288 days are "relatively long" and therefore necessitate "specific articulation of . . . factual findings before the district court could properly term the confinement atypical or insignificant"). Accordingly, the court must "make a fact-intensive inquiry" that would examine the actual conditions of confinement within SHU. *Palmer v. Richards*, 364 F.3d at 65 (citations omitted); *see also Wright v. Coughlin*, 132 F.3d t 137; *Brooks v. DiFasi*, 112 F.3d 46, 49 (2d Cir. 1997). If the conditions of confinement are undisputed, a court may decide the *Sandin* issue as a matter of law. *Palmer v. Richards*, 364 F.3d at 65. If, however, normal conditions of SHU exist, but the period of confinement is longer than the intermediate duration, then it would constitute a significant departure from ordinary prison life requiring the protection of procedural due process under *Sandin*. *Id*.

Plaintiff asserts that he was deprived of due process in connection with the Woodruff hearing

because he was found guilty without sufficient evidence. Prior to assessing the substance of this claim, we must determine whether, as a result of this disciplinary hearing, Plaintiff was deprived of a protected liberty interest.

On August 26, 2011, Defendant Woodruff sentenced Plaintiff to serve 545 days in SHU, without "any privileges" including commissary, phone, packages, and good time credit. However, Plaintiff's conviction was subsequently overturned on appeal and Plaintiff was released from SHU on either October 26, 2011 or November 9, 2011.[3] Therefore, despite being sentenced to 545 days of SHU confinement, Plaintiff only actually served between 67 and 76 days. Accordingly, Plaintiff's argument that the 545-day SHU sentence implicated a liberty interest is fatally flawed. Am. Compl. at ¶ 6. Plaintiff incorrectly assumes that the material time period in a *Sandin* analysis is the length of the sentence imposed rather than the length of time an inmate actually spent in SHU confinement. However, courts in this Circuit have interpreted *Sandin* and its progeny to mean just the opposite. That is, in the Second Circuit, it is the length of the *actual* punishment that is relevant in determining whether a period of SHU confinement implicates a cognizable liberty interest, and, not as the Plaintiff would argue, the length of the sentence imposed. *Scott v. Albury*, 156 F.3d 283, 287–88 (2d Cir. 1998) ("No right to due process is implicated in the prison context *unless* a liberty interest has been deprived, and we read *Sandin* [*v. Conner*] to require that we look to actual punishment in making this determination."). Thus, the Second Circuit has made clear that whether a punishment is atypical and significant is to be measured by the time actually spent in disciplinary confinement, not the potential time that might have been spent. Therefore, the relevant period of

---

[3] It is unclear from the Plaintiff's pleading whether he was released from SHU after his case was overturned and a rehearing was demanded on October 26, 2011, or whether he remained incarcerated until all charges were dismissed on November 9, 2011. Thus, it is not possible to know from the pleading exactly how long Plaintiff was actually segregated in SHU.

confinement for the purposes of our *Sandin* analysis is the 67-76 days Plaintiff spent in SHU confinement in connection with the sentence that was ultimately reversed, and not the 545-day period Plaintiff was initially sentenced to.

Moreover, in the Second Circuit, SHU confinement under **normal conditions** of SHU confinement "lasting fewer than 101 days ha[s] been found not to amount to atypical and significant hardship." *See Dawkins v. Gonyea*, 646 F. Supp. 2d 594, 606 (S.D.N.Y. 2009) (citing *Sealy v. Giltner*, 197 F.3d at 588–90). A number of district courts in this Circuit have found that periods of SHU confinement around or exceeding 67-76 days did *not* constitute a deprivation under *Sandin. See Edmonson v. Coughlin*, 1996 WL 622626, at *4-5 (W.D.N.Y. Oct. 4, 1996) (citing cases for the proposition that courts within the Second Circuit tend to rule, as a matter of law, that "disciplinary keeplock or SHU confinement to 60 days or less in New York prisons is not an atypical or significant hardship in relation to the ordinary incidents of prison life"); *Alvarado v. Kerrigan*, 152 F. Supp. 2d 350, 355 (S.D.N.Y. 2001) (93 days) (citing *Williams v. Goord*, 111 F. Supp. 2d 280, 289 (S.D.N.Y. July 28, 2000) (75 days confinement); *Jackson v. Johnson*, 15 F. Supp. 2d 341, 361–62 (S.D.N.Y.1998) (99 days); *Trice v. Clark*, 1996 WL 257578 at *3 (S.D.N.Y. May 16, 1996) (150 days)). That is not to say that any period of confinement that does not last longer than 101 days cannot be atypical. *See Palmer v. Richards*, 364 F.3d at 65 (noting that SHU confinements of less than 101 days could constitute atypical and significant hardships if the conditions were more severe than the "normal SHU conditions"). Rather, it means that in the absence of some allegation that the conditions of the confinement were harsher than the "ordinary incidents of prison life," such a short period of confinement would not ordinarily implicate a cognizable liberty interest.

Plaintiff's pleading is completely devoid of factual allegations regarding how the SHU

conditions differed from the ordinary incidents of prison life as experienced by other SHU or general population inmates at Clinton. The only allegations submitted by the Plaintiff relevant to the conditions he endured during his confinement in SHU, are two terse statements Plaintiff haphazardly threw into the Affirmation attached to his Amended Complaint and in his brief Response to the Defendants' Motion to Dismiss. In his Affirmation, Plaintiff merely notes that his disciplinary sentence included a concomitant denial of all privileges, including phone, commissary, and packages, as well as a loss of good time credit. Pl.'s Affirm. at ¶ 7. In his Opposition, Plaintiff expands on his alleged suffering by noting that while in SHU, his blood pressure increased, requiring medication, and he suffered from depression. Dkt. No. 21. Even when construed liberally, these additional facts do not support a plausible inference that the conditions of his confinement were unduly harsh or atypical in comparison with the ordinary incidences of prison life at Clinton.

The Plaintiff's naked allegations that as a condition of his confinement he lost package, phone, and commissary privileges are insufficient to support the inference that these losses were atypical for SHU or general population inmates at Clinton. In order to survive a motion to dismiss Plaintiff must allege that these deprivations represented conditions "much more severe than normal SHU conditions." *See Parks v. Smith*, 2009 WL 3055279, at *10 (N.D.N.Y. Aug. 17, 2009) ("Where a prisoner contends merely that his SHU confinement lasted for a period of something less than 101 days, without alleging that he served that SHU term under conditions more severe than normal SHU conditions, his right to relief under a procedural due process theory is purely speculative."). Here Plaintiff has merely noted that he lost these privileges, he has not alleged that such losses were in any way more severe than the losses faced by other SHU detainees.

With regard to the Plaintiff's medical ailments, the Court will not assume that the conditions

*-11-*

of his confinement caused Plaintiff's medical issues. Absent some allegation establishing a causal connection between the Plaintiff's medical problems and the conditions he endured while in segregative confinement, these allegations are insufficient to state a plausible due process claim. *C.f. Delaney v. Selsky*, 899 F. Supp. 923, 927-28 (N.D.N.Y. 1995) (finding atypical conditions of confinement where a seven foot tall prisoner in an SHU cell – which is smaller than a normal cell – was forced "to stand or lay in an uncomfortable and compromising position," causing him to experience "back problems"). Absent some allegation to the contrary there is no reason to believe that the Plaintiff would not have suffered from the very same medical ailments had he been confined to general population.

Lastly, Plaintiff's allegations with regard to the loss of good time credits is insufficient to establish a deprivation of a liberty interest. Putting aside for the moment that his sentence was reversed on appeal, the Second Circuit has made clear that an inmate has no liberty interest in the opportunity to earn good time credit. *Abed v. Armstrong*, 209 F.3d 63, 66-67 (2d Cir. 2000) (noting that good time credit is a discretionary matter and thus an inmate has no liberty interest in the opportunity to earn good time credit); *see also* N.Y. CORRECT. LAW § 803 (outlining New York's discretionary good time credit program).

Therefore, in light of the fact that Plaintiff's period of confinement was relatively short and he has not stated sufficient facts from which to conclude that the conditions of the his confinement were significantly different than the typical conditions of general population or SHU confinement at Clinton, the Court recommends that the Plaintiff's due process claim against Defendant Woodruff be **DISMISSED**.

### D. Defendant Guynup

Plaintiff's allegations regarding Defendant Guynup are poorly pled and confusing. It is unclear as to how, if at all, Defendant Guynup was personally involved in any alleged wrongdoing. Plaintiff's allegations against Defendant Guynup are few in number, and for the most part, are wholly conclusory. The Plaintiff made three allegations from which any personal involvement on the part of Defendant Guynup, if it exists at all, could be culled: (1) "Sgt. Guynup, as area Superior, had ratified, condoned, sanctioned, and particip[]ated" in the actions that led to his confinement in SHU; (2) that he ordered another correction officer to "lock [Plaintiff] up;" and (3) that he testified at the Plaintiff's hearing. Am. Compl. at ¶¶ 10 & 11; Pl.'s Affirm. at p.1. As to point one when construed liberally, it would appear that the Plaintiff is attempting to state that Defendant Guynup is liable by virtue of his role as a supervisor. Defendant's argue that Defendant Guynup cannot be held liable in a supervisory capacity because he is not in fact a supervisor, and even if he were, Plaintiff has failed to allege that Defendant Guynup was personally involved in any wrongdoing. For the reasons that follow, we agree with the Defendants and recommend that Plaintiff's claims against Defendant Guynup be **DISMISSED**.

The Second Circuit has held that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983. *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at \*2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

The Second Circuit has stated that a supervisory defendant may have been personally involved in a constitutional deprivation within the meaning of § 1983 if he: (1) directly participated in the alleged infraction; (2) after learning of the violation, failed to remedy the wrong; (3) created a policy or custom under which unconstitutional practices occurred or allowed such policy or custom to continue; or (4) was grossly negligent in managing subordinates who caused the unlawful condition or event. *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986) (citations omitted). Pointedly, "mere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority). As alleged, the involvement of Defendant Guynup, does not fall into any of these categories.

First, Plaintiff fails to provide any facts support the proposition that Guynup "ratified, condoned, sanctioned and participa[]ted" in a constitutional violation. Am. Compl. at ¶ 10. Plaintiff, at best, casts this as an argument. *Id.* ("Plaintiff [] argue[s] . . . Sgt. Guynup . . . ratified, condoned, sanctioned . . . ."). Such conclusory statements, by themselves, cannot constitute a cause of action. It is possible that the Plaintiff intended to allege that the Defendant Guynup became personally involved when he ordered the Plaintiff to be locked up after the uprising on August 19. The Plaintiff's vague allegation, and paucity of facts that Defendant Guynup locked him up cannot be the basis for Defendant's personal involvement.[4]

---

[4] Had Plaintiff clearly alleged that Defendant Guynup personally placed him in SHU, or directed that he be placed in SHU, on August 19, after the uprising, our analysis on the point of personal involvement would have been different. However, our ultimate conclusion would not change, because Plaintiff failed to identify a cognizable liberty
(continued...)

The only other allegation made by Plaintiff that could support an inference of personal involvement is Plaintiff's allegation that Defendant Guynup appeared and testified at his hearing. Plaintiff alleges that Defendant Guynup testified that no staff member observed Plaintiff engaged in or participating in the uprising. Am. Compl. at ¶ 11. Merely testifying at a disciplinary hearing – particularly when the testimony given is favorable to the accused – is insufficient to establish personal involvement. *See Muhammad v. Pico*, 2003 WL 21792158 at \*16-17 (S.D.N.Y. Aug. 5, 2003).

A common sense evaluation of the aforementioned factors leads us to the conclusion that the Plaintiff has failed to sufficiently allege any facts which could plausibly support a claim against Defendant Guynup based on personal involvement or supervisory liability. Therefore, we recommend that Defendants' Motion to Dismiss the claims against Defendant Guynup be **GRANTED.**

### E. Leave to Amend

The Second Circuit has cautioned courts in this District from dismissing *pro se* complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (quoting *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)); *see also Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the [*pro se*] complaint gives any indication that a valid claim might be stated."). As stated above the Amended Complaint is devoid of sufficient facts from which to conclude that the conditions of Plaintiff's confinement were unduly

---

⁴(...continued)
interest that could sustain a due process claim. *See supra* Part II.B.

harsh or atypical, more importantly, Plaintiff has failed to sufficiently allege that a cognizable liberty interest was at stake in this case. Therefore, we find that Plaintiff has failed to state a claim upon which relief could be granted and dismissal would be appropriate. The Amended Complaint is similarly devoid of any factual allegations linking Defendant Guynup's personal involvement, beyond the allegation that he is a supervisor, to any wrongdoing or constitutional infringement. However, in light of Plaintiff's *pro se* status, this Court recommends he be provided an opportunity to amend his Complaint to cure the deficiencies described herein, namely, providing further factual allegations regarding the conditions of his 67 to 76 day confinement in SHU, and setting forth a proper basis to find that Defendant Guynup participated in any wrongdoing.[5]

Should the District Judge adopt this recommendation, we provide the following guidance for Plaintiff in drafting an amended complaint. Plaintiff should note that any amended complaint, **which shall supersede and replace in its entirety the previous Complaint**, must contain a caption that identifies, by name, each individual and/or entity that Plaintiff is suing in the present lawsuit, and must bear the case number assigned to this action. **Plaintiff should note that any defendant not named in the amended pleading shall not be a defendant in this action.** No portion of any prior Complaint shall be incorporated into his amended complaint by reference. The body of Plaintiff's amended complaint must contain **sequentially numbered paragraphs containing only one act of misconduct per paragraph**. If Plaintiff claims that his civil and/or constitutional rights were violated by more than one defendant, or on more than one occasion, he shall include a corresponding number of paragraphs in his amended complaint for each such allegation, with each

---

[5] Any amended complaint should contain factual allegations connecting the variation in these conditions to the health problems experienced by the Plaintiff. Additionally, Plaintiff should make a conscientious effort to include a more thorough and detailed time line of the his SHU confinement, including the dates he was confined to and released from SHU.

paragraph specifying (i) the alleged act of misconduct; (ii) the date on which such misconduct occurred; (iii) the names of each and every individual who participated in such misconduct; (iv) where appropriate, the location where the alleged misconduct occurred; and, (v) the nexus between such misconduct and Plaintiff's civil and/or constitutional rights.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that the Defendants' Motion to Dismiss (Dkt. No. 19) be **GRANTED**; and it is further

**RECOMMENDED**, that in light of his *pro se* status, the Plaintiff be **GRANTED LEAVE TO AMEND** prior to dismissing the entire case; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: October 17, 2012
       Albany, New York

Randolph F. Treece
U.S. Magistrate Judge